UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 22-00060-BAH |
| | ) | |
| VINCENT GILLESPIE | ) | |

## DEFENDANT'S MOTION TO DISMISS COUNTS TWO AND EIGHT OF THE INDICTMENT

### I.    INTRODUCTION

Defendant, Vincent Gillespie, hereby moves to dismiss counts two and eight of the Indictment pursuant to Fed. R. Crim. P. 12(b). This motion is based on the legal authority outlined below including the district court's opinion in *United States v. Garret Miller*, 1:21-CR-119 (CJN), [D.E. 72].[1]

### II.    LEGAL AUTHROITY

An Indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). It "must provide the defendant sufficient detail to allow him to prepare a defense, to defend against a subsequent prosecution for the same offense, and to ensure that he be prosecuted upon facts presented to the grand jury." *United States v. Apodaca*, 275 F. Supp. 3d 123, 153 (D.C. Cir. 2017) (citing *Russell v. United States*, 369 U.S. 749 (1962), and *Stirone v. United States*, 361 U.S. 212 (1960)). A criminal defendant "may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(3). Rule 12 provides that a defendant may also move to dismiss the Indictment for "failure to state an offense" and "lack of specificity." Fed. R. Crim. P. 12(b)(3)(B)(iii)(v).

---

[1] This Motion restates arguments made in *United States v. Herrera*, 21-cr-619-BAH [D.E. 31]. The court denied the motion in that matter. *Id.* [D.E. 55 and August 5, 2022, Minute Order].

A criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or is so standardless that it invites arbitrary enforcement." *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). "The touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259 (1997). The "void-for-vagueness doctrine" protects against arbitrary or discriminatory law enforcement. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)).

The rule of lenity applies if the terms of the statute are ambiguous. Once it is determined that a statute is ambiguous, the rule of lenity "requires that the more lenient interpretation prevail." *United States v. R.L.C.*, 503 U.S. 291, 293 (1992).  This rule is rooted in "the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should." *Id*. at 305 (quoting *United States v. Bass*, 404 U.S. 348, 336 (1971)). The Courts have "[r]eserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute."  *Id*. (citing *Moskal v. United States*, 498 U.S. 103, 108 (1990)). "Whether a statutory term is unambiguous … does not turn solely on dictionary definitions of its component words. Rather, 'the plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole." *Yates v. United States*, 574 U.S. 528, 537 (2015) (*quoting Robinson v. Shell Oil Co*., 519 U.S. 337, 341 (1997)).

# III.    ARGUMENT

**1.    The Court Should Dismiss Count Two Because 18 U.S.C. § 231(a)(3) Is Unconstitutionally Vague.**

18 U.S.C. § 231(a)(3), Civil Disorders, provides that:

> Whoever commits or attempts to commit *any act to obstruct, impede, or interfere with* any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties *incident to and during the commission of a civil disorder* which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function shall be fined under this title or imprisoned not more than five years or both.

18 U.S.C. § 231(a)(3) (emphasis added). This subsection of the civil disorder statute is overbroad and unconstitutionally vague because §231(a)(3)'s imprecise and subjective standards fail to provide fair notice as to what conduct is criminal and creates significant risk of arbitrary enforcement. Further, several of the statute's terms are so broad and indefinite as to impose unqualified burdens on protected expression.

## a.    Section 231(a)(3) is Unconstitutionally Vague

"The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.'" *Johnson v. United States*, 576 U.S. 591, 595 (2015) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)). As the Supreme Court has explained,

> [i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic

policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abuts upon sensitive areas of basis First Amendment freedoms, it operates to inhibit the exercise of those freedoms.

*Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (internal citations and quotations omitted). As observed by the Supreme Court in *Grayned*, vagueness concerns are most acute when the statute imposes criminal penalties and implicates the First Amendment by chilling exercise of protected expression. *See Kolender v. Lawson*, 461 U.S. 352, 358-59 n. 8 (1983); *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 498-99 (1982); *see also Smith v. Goguen*, 415 U.S. 566, 573 (1974) Where "a statute's literal scope [reaches] expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts."). Section 231(a)(3) is replete with vague and imprecise terms that fail to provide a person of ordinary intelligence a reasonable opportunity to know exactly what conduct is prohibited.

### b.   "Any Act to Obstruct, Impede, or Interfere" Is Arbitrary Wording.

By penalizing "any act to obstruct, impede, or interfere," §231(a)(3) reaches the outer limits of verbal and expressive conduct without drawing any distinction that could exclude acts undertaken merely to convey a message or symbolic content. *See Roy v. City of Monroe*, 950 F.3d 245, 252 (5th Cir. 2020) (acknowledging that "[s]tanding alone . . . a prohibition on 'any act [undertaken] in such a manner as to disturb or alarm the public' fails meaningfully to guide the police and thus poses a substantial risk of arbitrary or discriminatory enforcement.") (*quoting Louisiana v. Cox*, 379 U.S. 536, 551-52 (1965)). The phrase "any act to obstruct, impede, or interfere" can fairly include within its plain meaning such diverse acts as pure speech, expressive conduct, minimal jostling or even grievous, violent assaults.

### c. "Incident to and During the Commission of a Civil Disorder" Is Vague Wording.

The broad phrase "incident to and during the commission of a civil disorder" is also problematically vague. The term "civil disorder," as defined under §232(1), is extremely far-reaching, applying to "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of . . . injury to the property." 18 U.S.C. § 232(1). This definition of "civil disorder" offers no limitation to solve the vagueness problem because it could apply to virtually any tumultuous public gathering to which police might be called, not just large-scale protests or riots. Further, there is no indication within the statute whether the defendant is required to have participated in the civil disorder, or if it is sufficient that he or she be in the general vicinity of the event.

### d. Lack of Scienter

The Supreme Court has repeatedly affirmed that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Vill. of Hoffman Ests.* at 499. But here, there is no such mitigation, because Section 231(a)(3) contains no scienter requirement, thus creating 'a trap for those who act in good faith.'" *Colautti v. Franklin*, 439 U.S. 379, 395 (1979) (quoting *United States v. Ragen*, 314 U.S. 513, 524 (1942)). Because the statute omits an express *mens rea* requirement, it is left to police, prosecutors, and judges to decide whether the statute requires knowledge or specific intent or neither. The absence of a scienter/*mens rea* element weighs in further favor of the statute's unconstitutionality. By enacting a statute with such imprecise language, Congress created "a criminal prohibition of alarming breadth." *United States v. Stevens,* 559 U.S. 460, 474 (2010). "Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation

of the laws they are expected to abide." *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019).

Section 231(a)(3)'s scope "may entirely depend" on a law enforcement official's unbounded

speculation about subjective factors, *Coates v. Cincinnati,* 402 U.S. 611, 614 (1971), thus

subjecting "individuals to the risk of arbitrary or discriminatory prosecution and conviction."

*United States v. Kozminski*, 487 U.S. 931, 949-50 (1988) (holding statute unconstitutionally vague

where liability "depend[ed] entirely upon the victim's state of mind").

    In *Houston v. Hill*, 482 U.S. 451 (1987), the Supreme Court declared unconstitutional a

municipal ordinance that made it unlawful to interrupt a police officer in the performance of his

or her duties, finding that the ordinance's sweeping nature was neither "inevitable" nor "essential

to maintain public order." 482 U.S. at 464. Because the ordinance was "not narrowly tailored to

prohibit only disorderly conduct or fighting words," it gave police "unfettered discretion to arrest

individuals for words or conduct that annoy or offend them." *Id.* at 465. Similarly, here,

§231(a)(3) casts far too wide a net by expansively encompassing "any act" that could interfere

with the duties of a police officer or firefighter during a civil disorder.

    Section 231(a)(3) is not limited to "violent acts" or acts that result in bodily injury or that

otherwise put persons or property in imminent danger. *C.f. United States v. Reese*, 92 U.S. (2

Otto) 214, 221 (1876) ("It would certainly be dangerous if the legislature could set a net large

enough to catch all possible offenders and leave it to the courts to step inside and say who could

be rightfully detained, and who should be set at large."). Moreover, the statute does not weed out

those acts with protected expressive content or those that occur in a traditional public forum.

Instead, as shall be developed further, *infra*, §231(a)(3) reaches a substantial amount of

expressive conduct, and without clear boundaries, the law chills free speech and invites

discriminatory application by law enforcement and the government.

**2.      Section 231(a)(3) Impermissibly Criminalizes Protected Speech under the First Amendment**

"In the First Amendment context, . . . a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008)). The First Amendment protects expressive conduct such as cross-burning, flag-burning and assembly in inconvenient places.[2] Conduct is considered expressive, and therefore protected, under the First Amendment when it "is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood." *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018) (quoting *Nunez v. Davis*, 169 F.3d 1222, 1226 (9th Cir. 1999)).

The plain language of §231(a)(3) is at odds with the protections of the First Amendment. Indeed, the broadness of §231(a)(3)'s scope would presumably authorize a felony conviction for a bystander who yells at police to desist from an arrest, one who gestures at officers to distract or to encourage resistance, or one who records police activity with a cell phone. *See Hill*, 482 U.S. at 459 ("[W]e have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them."); *Glick v. Cunniffe*, 655 F.3d 78, 83 (1st Cir. 2011) ("[T]he First Amendment protects the filming of government officials in public places."). The First Amendment does  not permit an unqualified prohibition on

---

[2] *See Virginia v. Black*, 538 U.S. 343, 365-66 (2003) ("[S]ometimes the cross burning is a statement of ideology, a symbol of group solidarity"); *Texas v. Johnson*, 491 U.S. 397, 405-06 (1989) (flag burning constituted "expressive conduct" protected by the First Amendment);  *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 (1984) (assuming that "sleeping in connection with the demonstration is expressive conduct protected to some extent by the Frist Amendment.")Broad criminal statutes like §231(a)(3) "must be scrutinized with particular care." *Hill*, 482 U.S. at 459; *see also Winters v. New York*, 333 U.S. 507, 515 (1948) ("The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement.").

"interference" with police duties because "the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Hill*, 482 U.S. at 462-462; *see also McCoy v. City of Columbia*, 929 F. Supp. 2d 541, 550 (D.S.C. 2013) (invalidating a state statute for overbreadth that made it "unlawful for any person to interfere with or molest a police officer in the lawful discharge of his duties.").

Criminal laws that "make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *Id.* Section 231(a)(3) extends to a substantial amount of constitutionally protected speech and expressive conduct, well in excess of the law's legitimate sweep.

### 3. Section 231(a)(3) Cannot be Saved by Construction without Violating the Constitutional Separation of Powers

Judicial interpretation cannot save §231(a)(3) from its constitutional invalidity. A statute's vagueness does not permit judges to "rewrite a law to confirm it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain, and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place." *Stevens*, 559 U.S. at 481. Rather, "[w]hen Congress passes a vague law, the role of the courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again." *Davis*, 139 S. Ct. at 2323.

**4. The Court Should Dismiss Count Eight because 18 U.S.C. §
1512(c)(2) Fails to State an Offense.**

**a. Congressional Intent and Statutory Construction of 18
U.S.C. § 1512(c)(2)**

Analyzing the congressional intent and plain meaning of the statute evidences that 18

U.S.C. § 1512(c)(2)'s purpose is to protect the integrity of hearings before tribunals by

preventing witness tampering and destruction of evidence. *See* 18 U.S.C. § 1512(c)(2).[3]

Section 1512 was enacted as part of the Sarbanes-Oxley Act of 2002, which is titled

"Corporate Fraud Accountability," and which targets "corporate malfeasance." Pub.L. No. 107-

204, 116 Stat. 745. Sarbanes-Oxley was designed to "protect investors and restore trust in

financial markets following the collapse of the Enron Corporation" after revelations that Enron's

outside auditor had "systematically destroyed potentially incriminating documents." *Yates v. U.S.*

574 U.S. 528, 532 (2015). In *Yates*, the Supreme Court narrowly interpreted the term "tangible

object" in § 1519 in keeping with the specific context and purpose of Sarbanes-Oxley.[4]

Recognizing that, in the Sarbanes-Oxley legislation, "Congress trained its attention on corporate

and accounting deception and cover-ups." *Id.* at 532.

In an amendment to §1512, the Sarbanes-Oxley Act added the current subsection (c)(2),

which penalizes corruptly obstructing, influencing, or impeding "any official proceeding." The

term "official proceeding" is defined in §1515 to include a proceeding "before a judge or court of

the United States" and a proceeding "before the Congress." Like the phrase "tangible objects" in

§ 1519, the phrase "official proceeding" in §1512 requires interpretation.

---

[3]Defendant acknowledges that the Court has previously denied a motion to dismiss this charge after
similar arguments by the defense in *United States v. Bledsoe, et al.*, Docket No 21-cr-204 [D.E. July 15,
2022, Minute Order]. Likewise, as noted in footnote 1, the Court denied a similar motion in *United States
v. Herrera*, 21-cr-619-BAH [D.E. 55 and August 5, 2022, Minute Order].
[4]18 U.S.C. § 1519 provides: [w]hoever knowingly alters, destroys, mutilates, conceals, covers up,
falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede,
obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of
any department or agency of the United States…..

"Dictionary definitions of the term 'proceeding' alone…cannot conclusively resolve" whether a proceeding is an "official proceeding" under § 1512. *United States v. Ermoian*, 752 F.3d 1165, 1170 (9th Cir. 2013). Courts have interpreted "official proceeding" to imply something formal. *See e.g.*, *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019) (FBI investigation not an official proceeding" because that term "implies something more formal than a mere investigation"), *cert. denied*, 140 S. Ct. 1106 (2020); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006) ) (investigation conducted by Bureau of Alcohol, Tobacco, and Firearms not an "official proceeding" because the term encompasses "events that are best thought of as hearings (or something akin to hearings"). As with the phrase "tangible object" in § 1519, the phrase "official proceeding" must be interpreted in light of the statute's express purpose, which is "to enhance and protect the necessary role of crime victims and witnesses in the criminal justice process." *United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008).

In the context of this "witness tampering" statute, an "official proceeding before the Congress" is logically limited to the same type of "adversarial nature" as court proceedings where there is a potential for witnesses to be influenced or documents destroyed. *See* S.Rep. No. 107-146, at *6 (2002). Not only must "the charged conduct have some reasonable nexus to a record, document or tangible object," *United States v. Singleton*, 2006 WL 1984467 *3 (S.D. Tex. 2006), or to witness testimony, *United States v. Kumar*, 617 F.3d 612, 619-20 (2nd Cir. 2010), but the obstruction must concern a proceeding involving adjudicative or at least "quasi-adjudicative responsibilities." *United States v. Perez*, 575 F.3d 164, 169 (2nd Cir. 2009).

In *Ermoian*, for example, the Ninth Circuit held that an "official proceeding" suggests a "formal appearance before a tribunal;" an FBI field investigation did not qualify. 752 F.3d at 1170-71. "[W]hen examining the term 'proceeding' within the grammatical structure of the definition at issue, it becomes clear that the term connotes some type of formal hearing." *Id*.

The court focused on the contextual language that § 1512 uses when referring to "official proceeding" explaining that § 1512 refers to "preventing the attendance or testimony of any person;" "preventing the production of a record, document, or other object, in an official

proceeding; and being absent from an official proceeding to which that person has been summoned by legal process." *Id*. at 1171-1172.  It was important to the court that the statute used the words, "testimony," "attendance," "production," and "summons," all of which "strongly implies a hearing before a formal tribunal."  *Id*. at 1172.  *Accord United States v. McDaniel*, 2014 WL 2084891 (N.D. Georgia 2014) ("official proceeding" for purposes of § 1512(c) did not include an FBI investigation); Sutherland at 921 F.3d at 426 (the term "proceeding" implies 'some formal convocation….in which parties are directed to appear") (quoting *United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019)).[5]

### b.  The Electoral Count on January 6, 2021, Was Not an "Official Proceeding" as Contemplated By § 1512(c).

When considering the legislative history of 18 U.S.C. § 1512 and Congress's role in counting electoral votes pursuant to the 12th Amendment and the Electoral Count Act of 1887, later codified in 3 U.S.C. § 15, the electoral count is clearly a ceremonial and administrative event that does not qualify as an "official proceeding." The Twelfth Amendment and the Electoral Count Act of 1887 place the responsibility on Congress to count electoral votes after the states have already heard any disputes and certified the vote. *Bush v. Gore*, 531 U.S. 98, 154 (2000) (Breyer, J., dissenting). Members of Congress may make an objection, in writing, and without argument. 3 U.S.C. § 15. According to the statute, there is no testimony, no witnesses, no argument, and no evidence. *Id*. Given this, an electoral count is simply not an adjudicative proceeding of the type that falls within the ambit of a witness tampering statute such as 18 U.S.C. § 1512(c)(2).

---

[5] The D.C. Circuit has not addressed the question, except in a pre-Sarbanes-Oxley version of § 1512, one that did not include the current subsection (c)(2), where the Court held that by entering into a plan to encourage others to falsify documents and to testify falsely before the Inspector General in a matter that was to be passed to the grand jury, the defendant obstructed an official proceeding. *United States v. Kelley*, 36 F.3d 1118, 1123 (D.C. Cir. 1994).

The purpose of the Electoral Count Act of 1887 was to resolve years of confusion as to

what exactly Congress's role was in counting the electoral votes—settling the issue by

minimizing congressional involvement, allowing them to resolve procedural issues, and engage

is ceremonial duties surrounding the count. *Id.* The sponsors of the Electoral Count Act hoped

that "if the disputes touching the Constitution of the Electoral Colleges in the States could be

disposed of in advance of their action, the counting of the electoral votes at the seat of

government…would be usually a little more than a formal ceremony." Section 5 of the Act

provides that the "State's selection of electors "shall be conclusive, and shall govern in the

counting of the electoral votes" if the procedural rules have been followed. *Bush v. Gore*, 531

U.S. 98, 113 (2000) (Rehnquist, J., concurrence). Thus, the legislative history of the Act

demonstrates that Congress's Electoral Count is intended to be a "ceremonial" finalization and

recording of the votes that have already been certified by the states. Consequently, while

Congress is in session on January 6, it is not an "official proceeding" for purposes of 18 U.S.C.§

1512(c) and § 1515(b).

As outlined by the legislative history and purpose of the Electoral Act of 1887,

"obstruction of an official proceeding before Congress" was never intended to apply to an event,

like the vote count, that involves no witness testimony, documentary or tangible evidence, or

meaningful adjudication. Many congressional hearings do involve witness testimony and

documentary evidence and allow Congress to exercise their investigatory power. In those

instances, Section 1512(c) protects the integrity of witness testimony and evidence. *See generally*

*United States v. Poindexter*, 951 F.2d 369, 382 (D.C. Cir. 1991) (discussing how the Victim and

Witness Protection Act of 1982 created a new provision, §1512, which prohibits various forms of

witness tampering). By contrast, Congress's counting of the Electoral College votes is not an

adjudicative proceeding; Congress was merely tasked the ceremonial and administrative task of

confirming the requirements for certification have been followed after the states previously determined that the votes were lawfully certified.

This administrative and ceremonial proceeding is not the target of section 1512(c) and the government cannot conveniently group the unique tradition of the Electoral Count with every other Congressional hearing as they are manifestly different—possessing different functions and characteristics. The government also cannot ignore years of precedent and legislative history plainly demonstrating that 18 U.S.C. § 1512(c)(2) is limited to adjudicative hearings where there is a potential for destruction of documents and witness tampering. Because the congressional vote on January 6, 2021, is not an official proceeding as contemplated by the drafters of § 1512(c), this Court should dismiss count eight of the indictment.

### C. 18 U.S.C. § 1512 is Unconstitutionally Vague on Its Face and As Applied in this Case.

Under the same principles of *United States v. Johnson*, 576 U.S. 591 (2015) and its progeny, 18 U.S.C. § 1512(c)(2) violates due process as it is vague and does not provide fair notice to Gillespie. Section 1512(c)(2) uses words throughout both sections that require courts – and anyone reading the statute - to speculate as to their meaning in the context of a defendant's particular actions. Courts must speculate as to the meaning of the word "corruptly" acted and the phrase "official proceeding." Even more problematic is that subsection (c)(2) is a "residual clause," one that is ambiguous and requires courts to determine exactly what line must be drawn in determining if a defendant is otherwise obstructing, impeding, or influencing an official proceeding before Congress.

In *Johnson*, the Supreme Court explained that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." 576 U.S. at 597. There, the Court found a due process violation where a defendant's sentence was enhanced by the residual clause in the Armed

Career Criminal Act if the prior felony "involved conduct that presented a serious potential risk of physical injury to another." *Id*. at 591. The residual clause violated due process because it required speculation in each case as to what could potentially cause injury in each set of circumstances. *Id*. at 598. The resulting ambiguity caused a wide range of interpretation and disparity among courts over the course of nine years and the Court acknowledged that the "failure of persistent efforts to establish a standard can provide evidence of vagueness." *Id*.

Similarly, as discussed above, what constitutes an "official proceeding" under § 1512(c) lacks cohesiveness in interpretation, creating disparities and confusion—evidencing its vagueness. While courts have interpreted "official proceeding" to mean something more than an investigation and something more formal, there is no established standard, leaving ambiguity among the courts. *See United States v. Perez*, 575 F.3d 164, 169 (2nd Cir. 2009); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006); *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019); *United States v. McDaniel*, 2014 WL 2084891 (N.D. Georgia 2014). Such ambiguity runs afoul of constitutional principles and renders the statute impermissibly vague. *See United States v. Poindexter*, 951 F.2d 369, 398 (D.C. Cir. 1991); *see also United States v. Morrison*, 98 F.3d 619, 630 (D.C. Cir. 1996); *Ricks v. District of Columbia*, 414 F.2d 1097 (D.C. Cir. 1968).

The vague nature of this statute is demonstrated by the large breadth with which the government seeks to apply it, resulting in vast inconsistencies—charging some individuals who reached the Senate floor, *United States v. Dale Jeremiah Shalvey*, 21-CR-334, others, like Gillespie, did not even enter the Capitol building, *United States v. Isaac Sturgeon*, 21-CR-91, and others who entered offices, but not others who entered offices, *United States v. Felipe Marquez*, 1:21-CR-136, or others who entered the speaker's conference room*, United States v. Andrew Ericson*, 1:21-CR-506. The inconsistent charging decisions along with the inherently vague words in the statute, as well as the vague "residual clause" that is the basis for charging these defendants all show that 18 U.S.C. § 1512(c)(2) is unconstitutionally vague and does not provide fair notice to Gillespie.

**D. The District Court's Decision in Miller**
**Supports Dismissal of Count Eight.**

In *Miller*, the court found the word "otherwise" in §1512(c)(2) "critical to determining what §1512(c)(2) covers." *Id*. at 11. The court rejected the government's suggestion that "otherwise" "serve[d] as a clean break between subsections (c)(1) and (2)." *Id*. at 11-12. It explained that the government's proffered reading failed to "give meaning to the word 'otherwise,'" and rendered the word "pure surplusage." *Id*. at 12. The court further reasoned that the government's reading was inconsistent with *Begay v. United States*, 553 U.S. 137 (2008), in which the United States Supreme Court concluded that the Armed Career Criminal Act's ("ACCA") use of the word "otherwise" tied together the preceding and following words. *Id*. at 12-13. Specifically, the Supreme Court in *Begay* concluded that "the text preceding 'otherwise' influenced the meaning of the text that followed: it 'limited the scope of the clause to crimes that are *similar to the examples themselves*.'" *Id*. at 13 (quoting *Begay*, 553 U.S. at 143). The court went on to explain why cases that adopted the "clean break reading of 'otherwise' in § 1512(c)(2)" were incorrect. *Id*. at 14-15.

In dismissing the 1512 count the court also rejected the government's alternative reading of the statute— "that subsection (c)(1) contains specific examples of conduct that is unlawful under subsection (c)(2)" such that that the "link between" the two subsections "is that the unlawful conduct must relate to an 'official proceeding.'" *Id*. at 15 (citing *United States v. Montgomery*, 2021 WL 6134591, at \*12). As the court explained, the problem with this alternative reading is that it renders the word "otherwise" superfluous because both subsections contain the phrase "official proceeding." *Id*. at 15-16.

The court concluded that "[s]ubsection (c)(2) is a residual clause for subsection (c)(1)," operating as a "catchall for the prohibition contained in subsection (c)(1)." *Id.* at 17. Under this interpretation, consistent with the Supreme Court's holding in *Begay*, the link between the two subsections is the conduct prescribed in subsection (c)(1), and "subsection (c)(2) operates to ensure that by delineating only certain specific unlawful acts in (c)(1) . . .—Congress was not 'underinclusive'" by allowing other ways to violate the statute that are similar to the conduct prohibited in (c)(1). *Id.* at 17-18.

Delving deeper, the court reasoned that the structure and scope of § 1512 suggests that subsection (c)(2) has a narrow focus, because the other subsections criminalize specific conduct in narrow contexts. *Id.* at 20. The court reasoned that while subsections (c)(2) and (c)(1) are different than the other subsections, because they prohibit an individual from taking certain actions directly rather than towards another person, the language in subsection (c)(1) still "hones in on a narrow, focused range of conduct." *Id.* at 21. The court explained that, by contrast, if § 1512(c)(2) "signals a clean break" from subsection (c)(1), it would be inconsistent with the statute as a whole because it would be the only provision to not contain a narrow focus. *Id.* The court reiterated that any different reading would improperly render subsection (c)(2) unnecessary. *Id.* at 21-22.

The court also discussed how the historical development of §1512 supports the conclusion that § 1512(c)(2) operates as a catchall to (c)(1). *Id.* at 23-25. Per the court, the revisions to § 1512(c) in 2002 filled a gap that existed because §1512(b) made it unlawful to cause "another person" to take certain actions but not for a person to take such action directly. The 2002 enactment of 1512(c) fixed that problem and took much of its language directly from 1512(b). *Id.* 23-24. The fact that Congress took much of the language from a provision already

contained in subsection (b), shows Congress's intent for subsection (c) to have a narrow, limited focus—just like subsection (b)(2)(B). *Id*. at 25.

Lastly, the court found that the legislative history also supports a narrow reading of subsection (c)(2). *Id*. at 26-28. The court explained the evolution of § 1512(c) resulted in a statute that ensured that individuals acting alone would be liable for the same acts that were prohibited in other parts of § 1512. *Id.* at. 27-28.

For all those reasons, the court in Miller held that § 1512(c)(1) limits the scope of (c)(2) and "requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding."[6] Because the government did not allege that Mr. Miller took any action with respect to records or documents or "other objects," the court held that the indictment failed to state an offense against him. *Id*. at 29.

Here, just as in *Miller*, the indictment does not allege or imply that Gillespie took any action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence Congress's certification of the electoral vote. *See* Superseding Indictment, ECF No. 18. Therefore, it fails to allege a violation of § 1512(c)(2).

Gillespie respectfully urges this Court to adopt the analysis and reasoning set forth in *Miller* and find that count one fails to state an offense against him because there is no allegation that he took any action with respect to records or documents.

---

[6] The *Miller* court also explained that, even assuming arguendo its interpretation was incorrect, at the very least the Court would be left with "serious ambiguity in a criminal statute" requiring lenity

## IV.     CONCLUSION

For the foregoing reasons, the Court should grant this motion and dismiss counts two and eight of the Indictment.

> VINCENT GILLESPIE
> By his attorneys
>
>
> */s/ Timothy G. Watkins*
> Timothy G. Watkins
> Forest O'Neill-Greenberg
> Federal Defender Office
> 51 Sleeper Street, Fifth Floor
> Boston, MA 02210
> Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I, Timothy G. Watkins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 4, 2022.

> */s/ Timothy G. Watkins*
> Timothy G. Watkins